# EXHIBIT A

## AMENDED AND RESTATED OUTREACH AGENCY AGREEMENT

This Amended and Restated Outreach Agency Agreement, entered into effective September 1, 2013 is by and between Sprint United Management Co., a Kansas corporation, having a place of business at 10 Independence Blvd., Warren, New Jersey 07059, for and on behalf of Virgin Mobile USA, L.P. (**"Sprint"**) and Credico (USA) LLC, a Delaware limited liability company, having a place of business at 525 W. Monroe Street, Suite 2350, Chicago IL 60661 ("**Agency**") and amends and restates the Outreach Agency Agreement between Sprint and Agency, dated as of September 15, 2012.

WHEREAS, Sprint offers mobile phones and service to income eligible households through the government-supported Lifeline assistance program under the brand name "Assurance Wireless" ("Assurance Wireless");

WHEREAS, Agency provides community outreach marketing services; and

WHEREAS, Sprint desires to authorize Agency to perform outreach marketing services and solicit applications and collect applications for potential Assurance Wireless customers ("Customers") as set forth in detail herein;

NOW, THEREFORE, in consideration of the premises and mutual agreements contained herein, and for other valuable consideration the receipt of which is hereby acknowledged, the parties hereto hereby agree as follows:

1. **Authorization.**
   a) Sprint hereby authorizes Agency as an official Outreach Agency ("OA") and grants Agency the exclusive right to act as an OA by promoting Assurance Wireless and soliciting and collecting Assurance Wireless applications ("Applications") from individuals meeting the established criteria in Agency's designated market in accordance with the terms and conditions of this Agreement.  Agency's designated market area ("Market") is Sprint's Assurance Wireless Market (attached hereto as Exhibit A and incorporated herein by reference).  Agency will market applications utilizing an approved electronic device.

   b) Notwithstanding the foregoing, and for purposes of clarification, Agents (as defined herein) may assist the applicant in completing all parts of the Application but are not authorized to collect or retain any customer proprietary information. Agents may complete the customer attestations and digital signature on behalf of the applicant; however they must read the attestations and legal wording verbatim to the applicant, provide the applicant a written copy for their records, and obtain applicant permission prior to completing on their behalf. Assurance Wireless audits, and Agency self-audits, will be performed to measure compliance with this provision.
.
   **c)** Sprint has the right to make changes to the Market in its sole discretion. The Market is subject to change by Sprint with 45 (forty-five) days written notice to Agency. Any changes to or expansion of the Market proposed by Agency must be approved in advance by Sprint.

1

CONFIDENTIAL

d) **Non-Exclusive Relationship with OA.** Sprint may offer other third parties exclusive rights with respect to certain territories or certain customer categories.  Sprint may also solicit and collect Applications for Assurance Wireless using its own sales force or other authorized representatives or conduct any other marketing activities.   Sprint will determine the number and type of authorized representatives.

2.      **Obligations of Agency; Services.** Agency shall provide the following services (the "Services") in the Market, to support community outreach for the Assurance Wireless service:

a) **Outreach Services; Standard Operating Procedures.** In its performance of Services hereunder, Agency shall comply with the Outreach Program Standard Operating Procedures (the current form of which is attached hereto as Exhibit B and incorporated by reference into this Agreement), and all successor policies and procedures for the Assurance Wireless program (the "SOPs") provided in writing to Agency.  Sprint will provide Agency with advance written notice of any updates to the SOPs.

b) Agency will hire and train a street team (referred to herein as "field agents") to promote the Assurance Wireless service and collect Applications.  Field agents will inform and educate potential Customers about Assurance Wireless, seek to determine and advise on an individual's qualification for the program and engage the eligible Customers in the Application process for Assurance Wireless. Promotional efforts will include distributing printed materials provided by Sprint, visiting targeted community locations and attending public or private community events. The Services may be executed in conjunction with associated government, corporate, non-profit and other community organizations ("Outreach Partners"). During the Term, additional Outreach Partners and outreach sites and activities may be identified by Agency and integrated into the outreach process, subject to notifying Sprint in advance. Agency understands that Sprint may establish certain performance goals from time to time based on Agency's Market or other factors.

c) **Conduct; Non-Compete.**  Agency shall at all times conduct its business in a manner as will reflect favorably on Sprint and shall not engage in any deceptive, misleading, illegal, or unethical business practices.  Agency shall not promote or solicit Applications outside the Agency's designated Market and shall refer all inquiries outside of Agency's Market to Agency's designated National Account Manager (NAM).  Within the Market, Agency shall not act as a representative for any other Lifeline products or services or similar product or services that compete with Assurance Wireless.

d) **Event Services.**  In addition to the Agency initiated outreach services, from time to time, Sprint may request that Agency promote Assurance Wireless and conduct the Services at specified events. Sprint shall pay Agency for additional services related to such add-on events, at a rate to be determined in advance and agreed upon in writing by the parties. After agreeing to Sprint's request for any event related service, Agency may not cancel such participation in the event without at least seven (7) days prior notice, and for good cause.

e) **Subcontractors; Agency Employees**.

   i.   Agency may not subcontract or use third parties ("Contractors") to perform the Services under this Agreement unless: (a) Agency obtains the prior written

2

consent of Sprint, (b) Agency causes such Contractors performing the services hereunder to enter into a confidentiality agreement which contains terms equally as protective as the confidentiality provisions set forth in this Agreement, and (c) each such Contractor provides the requisite insurance as set forth in Exhibit C hereto.  Subject to the foregoing insurance requirement being satisfied, Sprint hereby consents to Agency's use of the Contractors listed on Schedule 1 hereto to perform the Services, including the hiring and training and supervision of field agents. Agency shall be responsible for any acts or omissions of any Contractors and all fees and commissions charged by such third party Contractors.

ii.  Agency has full control over its own employee relations, and will exercise complete control over the hiring, conduct, training, supervision, performance and termination of its employees (including any individual working on a temporary or contract basis).  Sprint is not a joint employer or co-employer of Agency's employees.  Sprint may request the removal of any Agency employee or agent whom it finds, in its reasonable judgment, unacceptable from performing Services under this Agreement (including any Agency employee/agent who has not complied with the SOPs or training standards or a manager of agents), and, Agency will (i) immediately permanently remove such individual from service on Assurance Wireless to the extent the reason for removal is materially unacceptable and egregious behavior on the part of the Agent or (ii) immediately temporarily suspend that individual from service on Assurance Wireless to the extent that the reason is correctable and not egregious and shall have three (3) days to address the infraction cited by Sprint and correct the problem to Sprint's satisfaction.  Following Agency's efforts to correct the problem, Agency shall report the details to Sprint, and provide Sprint with an opportunity to re-examine such individual and the circumstances and either (x) agree that such agent or employee may return to work on Assurance Wireless or (y) if a problem cannot be corrected to Sprint's reasonable satisfaction, Sprint shall have the right to direct Agency to permanently remove such individual from service on Assurance Wireless.

iii.  The acts or omissions of Agency and anyone with which it is associated (such as its employees, representatives, affiliates, agents, Contractors, and their employees) will be considered the acts or omissions of Agency under this Agreement.

**f)  Additional Restrictions**

  i.  No Internet Presence or Mail Order Solicitations.

  **(1)  Internet.**  Internet sales are strictly prohibited.  Agency may not host any websites containing Sprint Content or post Sprint Content on any website except as expressly agreed upon in writing by Sprint.   Agency may not use Sprint Marks or Sprint Content (each defined below) on any website in the absence of such guidelines.  Sprint Content is any information about Sprint, its products or Services, including without limitation the Sprint name and Marks, Service Offer, and product specifications.

  **(2)  Social Media.**  "Social Media" (e.g. Facebook, Twitter or similar websites or services) may not be used for sales or marketing, and may only be used

CONFIDENTIAL                                           SPRMAR-000003

as expressly provided for in any written guidelines provided by Sprint. Social Media may not be used in the absence of such guidelines.

**(3)** **Mail Order Solicitations; Mass Distribution**. Agency may not solicit or obtain leads for Assurance Wireless via mail order or via mass distribution. All Applications shall be collected through direct personal interaction.

ii.    <u>No Solicitation</u>.  During the term of this Agreement, and for a period of one (1) year after the termination or expiration of this Agreement, Agency and its affiliates, subsidiaries, owners, subcontractors, employees, and agents will not solicit or try to persuade any Assurance Wireless Customer that subscribed to the Assurance Wireless services through Agency's efforts within a period of 2 years prior to the termination or expiration of this Agreement to buy any other communications products or services within the Sprint Service Area.  Agency will not compile and use lists of Assurance Wireless Customers for any reason, or sell a list of Assurance Wireless Customers for any reason.

iii.   <u>Sprint Systems.</u> Agency will not have access to Sprint systems.

**3.   Support and Training.**

**a)   Sprint Obligations**. Sprint will provide an on-site or virtual initial training session with Agency's designated training leads. Training will include an explanation of the terms of the Assurance Wireless service and focus on the Application processing and collection process, eligibility verification process and related Assurance Wireless sales guidelines (collectively the "Training Guidelines"). Sprint will provide Application materials, informational pamphlets as well as signage for Assurance Wireless to Agency. In addition, Sprint will provide Agency with Assurance Wireless t-shirts for field agents (up to 50 shirts) and up to 25 name badge lanyards per year for each of Agency's areas. Any t-shirt or name badge lanyards required in excess of these amounts shall be paid for by Agency. Sprint will provide Agency with updated training and sales materials as appropriate.

**b)   Agency Obligations**. Agency will ensure that each employee or field agent will complete the Assurance Wireless training and receive the training certificate from Sprint prior to starting any services for Assurance Wireless.  A training certificate will be delivered by Sprint upon completion, for each employee/field agent.  The employee/field agent must execute the certificate to acknowledge completion, and Agency shall maintain copies of executed certificates. All field agents and Agency staff (including contractors) must adhere to the Training Guidelines and the SOPs to ensure that the Assurance Wireless brand is represented in a professional and courteous manner. Agency acknowledges that the Training Guidelines and SOPs may be revised by Sprint in its sole discretion.  Sprint will provide Agency with notice of any updates or revisions to the Training Guidelines and SOPs, and Agency must ensure that each field agent completes re-training within the deadline set by Sprint or such agents shall not be permitted to continue to perform services.

**4.   Customer Relationship and Sprint Service Offer.**

4

a) **Ownership of Customer Subscription Relationship.**   At all times, Sprint owns the subscription relationship with the Customer.   Sprint will determine:

    **i.**    whether to accept, serve, suspend or discontinue Service to any Customer;

    **ii.**    the Services and Service Area;

    **iii.**    the Service rates; and

    **iv.**    any other terms or conditions that apply to any Customer or Service Offer.

However, Sprint agrees in good faith to ship the phones on Approved Applications and approve Applications which meet all eligibility criteria.

5

**SPRMAR-000005**

**b) Sprint Service Offer.**

    **i.**    **Service Offer.** Sprint will provide to Agency information about the Assurance Wireless offer and terms and conditions (collectively, the "Service Offer"); and other signage, brochures and point of sale marketing materials (collectively, the "Marketing Materials"). Agency will not make any changes to the Marketing Materials or create its own materials without Sprint's prior written approval. Sprint owns all intellectual property rights, including copyrights, in the Marketing Materials, and Sprint grants Agency a non-exclusive, limited right to use and display the current version of the Marketing Materials only for purposes consistent with this Agreement.

    **ii.**    **Changes to the Service Offer by Sprint.** Sprint may change its Service Offer in whole or in part. Sprint will use commercially reasonable efforts to give Agency advance notice of changes to the Service Offer.

**c) No Right to Change Service Offer.** Agency must present the current Service Offer provided by Sprint to Customers or potential Customers. Agency will provide the relevant point-of-sale materials designated by Sprint. Agency will not change the Service Offer, grant any discounts or make any adjustments to the rates, misrepresent -- either affirmatively or by omission -- the Service Offer or any terms and conditions of Sprint Services, or impose on Customers any activation or other fees, standards, commissions or contracts, including without limitation requiring the Customer to remain a Customer of Sprint for any period of time or impose a term or termination fee.

**5. Fraudulent Activity.**

**a) Fraud Monitoring.** Agency must monitor its employee and field agent activities to ensure that it is protecting against fraudulent transactions. Agency will perform an audit of each field agent on a quarterly basis as set forth in Section 10(a), or shall cause each Contractor to perform such audits. Agency will immediately notify Sprint if any aspect of fraud has been committed, is found, or is suspected of Agency's or Contractor's employees/field agents or by any applicants or customers should Agency discover such fraud.

**b)** Sprint also will regularly evaluate Agency's Applications and conversion rates for fraud. Sprint will immediately notify Agency if any aspect of fraud has been committed, is found or is suspected of Agency's employees/field agents so that Agency may correct issues and/or assist in the investigation. Sprint shall provide Agency with all information pertaining to each fraud related Application, and Agency shall have the right to contest each such rejected Application.

**c)** Agency will take all commercially reasonable actions to ensure that Applications are valid, and will work closely with Sprint to ensure that systems are created and adhered to in order to deter Agency fraud (e.g., falsification of customer information on Applications and Applications completed by a field agent without any customer contact or without customer consent). Agency will immediately investigate any suspected fraud and work with Sprint to prevent such fraud. If fraud is confirmed that is of the nature to cause Sprint to reasonably conclude that such fraud is systemic within Agency or if Agency fails to promptly respond to and take all reasonably necessary actions to address fraud, then grounds exist for severance of the Agency relationship with Sprint. Agency

6

management will insure training, policies and procedures are in place to inhibit and prevent acts of fraud by their Contractors, employees and field agents.

d) With respect to Applications which are identified by either Agency or Sprint as being potentially fraudulent, the parties shall follow this process:

   i.  Sprint shall maintain a list of "Suspect Applications" and upon knowledge or suspicion of fraud, shall add such applications to the list, which it shall share with Agency, and Agency shall then have the opportunity to research and provide any evidence to dispute the claim of fraud;

   ii. Sprint shall then suspend and withhold any Commission payments not yet paid for such Applications until the validity of the Application has been established;

   iii. Sprint shall, during the 30 days after such Application is listed on the Suspect Applications list (the "Investigation Period"), complete an investigation, with the cooperation and input of Agency, and make a final determination, in its reasonable judgment, of whether the Application was fraudulent or valid; and

   iv. Upon completion of the 30 day Investigation Period,  Sprint shall: with the next monthly payment due Agency either

        1. Pay any Commissions withheld on Approved Applications which are deemed non-fraudulent, or

        2. Charge Agency for any Fraud Charges as detailed in clause (f) below for any Applications deemed fraudulent.

e) Agency will not be held liable for losses sustained by Sprint as the result of improper, fraudulent, or negligent conduct by consumers or customers, unless such fraud was due to actions of Agency, its Contractors, or their employees or field agents.

f) Furthermore, Agency will be financially responsible for reimbursing Sprint for all expenses incurred related to fraud committed by Agency and/or its employees and field agents, and shall not earn any commissions on Applications submitted in connection with any Agency, Contractor, employee or field agent fraud. Specifically, as a result of any acts of fraud of Agency, Contractors or their employees/field agents, Sprint will charge Agency for ("Fraud Charges"):

   i.  Any compensation already paid for the Applications related thereto  (as set forth in Section 9);

   ii. Sprint's processing costs  for the fraudulent Applications;

   iii. Sprint's costs to reprocess Applications to due to fraud;

   iv. Sprint's costs of recertification of Assurance Wireless customers which were generated from the fraudulent Applications;

7

  v. Sprint employee expenses incurred related to the fraud investigation (including travel costs and employee hours);

  vi. Sprint's loss of the handset subsidy and related Sprint costs with respect to any Assurance Wireless customer which must be terminated due to the fraudulent Application; and

  vii. Any penalties, fines or other charges imposed on Sprint by the FCC or other governmental or regulatory agencies as a result of the fraud.

**g)** Sprint will submit to Agency a detailed breakdown of all Fraud Charges and shall itemize the charges for each Application which is deemed fraudulent.  Sprint shall collect any Fraud Charges first by offsetting against any Commissions due and not yet paid to Agency. It shall be up to Agency to identify which agent or Contractor office was responsible for fraud, and to adjust any payments it makes to its Contractors.  However, Agency will be responsible to Sprint for any and all such costs if they exceed the commissions due and payable to Agency. While Sprint will involve Agency in all investigations, all such chargebacks and penalties related to fraud may not be disputed by Agency.

**6.  Other.**
 **a)** <u>Compliance with Law</u>**.**  Sprint and Agency will each comply with all applicable federal, state, county and local laws, rules, regulations and orders.  Agency will not cause Sprint to violate any applicable law.
 **b)** <u>Goodwill</u>.  Agency will preserve and enhance the goodwill associated with the Assurance Wireless brand and the Assurance Wireless services.
 **c)** <u>Duty to Cooperate</u>.  Agency will cooperate with requests from Sprint regarding Sprint investigations, customer complaints, governmental inquiries or investigation requests, including inquiries or requests from the Federal Communications Commission ("FCC") or state Attorneys General.
 **d)** <u>Insurance Requirements</u>.  Agency will comply with the insurance requirements set forth in Exhibit C. Agency must submit copies of all insurance documents as a condition of Sprint entering into this Agreement.
 **e)** <u>Corporate and Tax Documentation.</u> Agency must submit tax ID documentation (W9 or other acceptable documents), and copies of all business licenses and corporate paperwork (LLC, Corp, etc.) as a condition of Sprint entering into this Agreement.
 **f)** <u>Notices</u>. Agency shall immediately notify Sprint management if Agency is contacted by the press, legal, or law enforcement authorities regarding any aspect of the Assurance Wireless program.
 **g)** <u>Press Relations; Public Appearances</u>. Neither Agency nor any Agency employee/field agent may conduct any public appearances or interviews relating to Assurance Wireless without prior written permission from Sprint.

**7.  Customer Support.**
Sprint will be solely responsible for all customer service related to the Assurance Wireless program.

**8.  Reporting**. On a weekly basis, Agency will submit a report via email to the NAM, which will state the number of Assurance Wireless Applications submitted to Sprint's application processor during the prior week and the tracking number related thereto.  Agency acknowledges that the Application reporting details and submission methods are subject to

CONFIDENTIAL                                **SPRMAR-000008**

change from time to time, as directed by Sprint. Sprint shall provide a sample form of report to Agency.

9. **Compensation.**

a) **Commissions**. During the Term, Agency shall be compensated $25 per Approved Application in Texas and $16 per Approved Application in all other states ("Commission").

b) An Application may be rejected if it is illegible or incomplete, if the address is not valid, or if the address already has Lifeline service. As set forth in Section 5, Sprint shall provide Agency with all information pertaining to each Application rejected due to fraud of Agency its employees or field agents, and Agency shall have the right to contest each such rejected Application. The information to be provided will be agent code, type of fraud identified, and applicant information (name, address).

c) An "Approved Application" means any valid, non-fraudulent Assurance Wireless Application which includes Agency's designated OA code, which is then approved for receipt of the Assurance Wireless service.

d) The compensation structure is subject to change by Sprint with forty-five (45) days written notice to Agency.

e) **Payment Terms**. Sprint shall pay the Approved Application Commission to Agency on a monthly basis, one month in arrears. For example, Sprint shall pay Agency for all Approved Applications which are approved during March on the last business day of April.

f) **Additional Services**. As set forth in Section 2(d), Sprint may pay additional fees for staffing for requested events.  Agency shall invoice Sprint upon completion of such event and Sprint shall pay such fees within 30 days of invoice.

g) **Expenses**. Agency acknowledges that it is solely responsible for all costs of performing the Services and submitting Applications, including shipping of the Applications or other administrative costs.  Sprint shall not reimburse Agency for any expenses and shall only pay to Agency the Commission as set forth herein.

h) **Market Development Funds**. For each approved Market identified in Exhibit A Sprint may, at is discretion, provide up to $5000 in Market Development Funds ("MDF") for Agency to be used to offset start-up costs within the market.  The MDF funds are not subject to repayment to Sprint, except in the event that Agency voluntarily terminates activities in a Market without the prior consent of Sprint, prior to 180 days after payment of the MDF funds. The MDF will be included in the first commission check earned after the launch of each approved Market.

10. **Audits.**

a) **Outreach Agency Self-Audits.** Agency will be responsible for completing an audit for each employee/field agent on a quarterly basis. The audit will consist of tracking activity and completion of the Market Observation Checklist, which shall be kept by OA

CONFIDENTIAL                                                    SPRMAR-000009

on file for review by Sprint. Agency must report to Sprint any audit results which reveal privacy related failures, fraud, violations of the SOPs or other improper activities.

b) **General Audits and Inspections.**   Sprint may audit Agency's performance of its obligations, including by use of a secret shopper program, conducting customer satisfaction reviews, and inspecting compliance with Sprint's processes and guidelines. Sprint may on notice, inspect the relevant books, records or processes of Agency.  Sprint will pay all reasonable fees and costs incurred by Sprint in connection with these audits; provided, however, if Sprint's audit is in response to evidence or suspicion of fraud, then such costs will be charged to Agency, as set forth in Section 5.

c) **Audits and Corrective Action Plans.**  If any audit under this Agreement identifies a privacy related failure by Agency or other failure related to a breach of the SOPs or otherwise, Agency will promptly develop a corrective action plan, which will be submitted to Sprint for review and approval.  Agency will implement this plan at its sole expense and within a time frame set by Sprint. Follow up audits and/or mystery shops should be performed by the Agency to ensure that the deficiencies have been corrected. If the issue cannot be corrected in a timely manner, Sprint shall have the right to suspend Agency's activities until the correction is achieved.

**11. Use of Sprint Marks.** Agency shall not use, reproduce, publish, distribute, and publicly display any  name, trademark, logo, or other source identifying indicia (including the Assurance Wireless name, logos and marks) of Sprint or its affiliates ("Sprint Marks") without Sprint's prior written approval in each instance.

**12. Representations and Warranties.**

a) **Authority**.  Each Party represents and warrants that it has full authority to perform its obligations under this Agreement and the person executing this Agreement has the authority to bind it.  Agency represents and warrants that Agency's exact legal name, type of organization and jurisdiction of organization are correctly set forth in the recitals to this Agreement.

b) **Performance.**  Agency represents and warrants that it will perform its obligations under this Agreement in a legal, ethical and professional manner.

c) **No Conflicts**.  Agency represents and warrants that it is not subject to any limitation or restriction that would restrict Agency from entering into this Agreement or performing any of its obligations.

d) **Business Licenses**.  Agency represents and warrants that it and all of its Contractors will obtain and keep current at its own expense all governmental permits, certificate and licensing (including professional licenses, permits and permissions for promotion on public or private property if applicable) necessary for it to perform its services and agrees, upon request, to provide Sprint with verification of license status and/or compliance with the above.   Agency agrees to indemnify Sprint and the Sprint Indemnitees for any fines incurred due to breach of this section by Agency or its Contractors.

e) **Review of Agreement**.   Agency represents that it has carefully reviewed this Agreement and has had sufficient opportunity to consult with a lawyer, accountant, or other professional advisor.   Agency represents that, if it did not use a professional

advisor, it is satisfied in relying on its own education, experience, and skill in evaluating the merits of and entering into this Agreement.

**13. Indemnification.**

Agency will defend, indemnify and hold harmless Sprint, its parents, affiliates and subsidiaries, and their respective officers, directors and employees, and agents ("Sprint Indemnitees") from and against any and all claims, damages, liabilities, costs, losses, and expenses, including reasonable counsel fees (the "Losses"), arising out of or relating to any third party claim, action, suit, or other proceeding, to the extent that such Losses arise from or are related to any breach or alleged breach by Agency (or any of its employees, Contractors, agents or representatives)) of its covenants, representations or obligations under this Agreement or any activities conducted by Agency (or any of its employees, Contractors, agents or representatives) relating to this Agreement.  If any claim for workers' compensation benefits is asserted against Sprint by any of Agency's employees or employees or agents of Contractors assigned to promote Assurance Wireless or, in the event of death, by their personal representatives, then, upon written notice from Sprint, Agency shall undertake to defend the Sprint Indemnitees against such claim(s) and shall indemnify and hold the Sprint Indemnitees harmless from and against any such claim(s) to the extent of all benefits awarded, including reasonable attorneys' fees associated therewith.

**14. Confidentiality.**
   a) **Definition of Confidential Information**.

   i. **Definition**.  "Confidential Information" means information received by a Party in the course of this Agreement that is marked as confidential or proprietary, or that given the nature of the information or the circumstances surrounding its disclosure to or receipt, reasonably should be considered as confidential. Confidential Information may be reduced to writing, maintained on any form of electronic media, or maintained in the mind or memory of the receiving party and may be compiled by Sprint or Agency.

   ii. **Examples**.  Examples of Confidential Information include this Agreement, information regarding existing and potential Sprint or Agency Customers, Sprint or Agency Customer lists, prospects provided by Sprint for the purpose of direct marketing the Sprint Services and Products, Sprint provided access credentials, customer referral programs, either party's unique sales and servicing methods, advertising and promotional materials and techniques, pricing materials and techniques, vendor and product information, training courses and materials, and insurance and credit policies.

   b) **Exceptions to Confidential Information**.  The receiving party is not obligated to protect Confidential Information that is:

   i. In the public domain through no fault of the receiving party;

   ii. Within the legitimate possession of the receiving party, with no confidentiality obligations;

   iii. Lawfully received by the receiving party from a third party having rights in the information without restriction, and without notice of restriction against its further disclosure; or

11

iv.   Independently developed by the receiving party without breaching this Agreement, or by parties who have not had, either directly or indirectly, access to or knowledge of the Confidential Information.

c) **Protection of Confidential Information**.  The receiving party will take reasonable measures to avoid disclosure or unauthorized use of the Confidential Information, including at a minimum those measures that it takes to protect its own confidential information, but in no event less than a reasonable standard of care.  Each Party will use reasonable procedures to prevent the unauthorized use and disclosure of Confidential Information.

d) **Disclosure of Confidential Information**.

i.   The receiving party will not disclose Confidential Information except to its employees, agents, contractors or subcontractors that need to know the Confidential Information to perform the Party's duties under this Agreement, and only to the extent justifiable by that need.  The receiving party must ensure that its employees, agents and subcontractors are subject to a confidentiality agreement consistent with this Agreement.

ii.   Confidential Information may be disclosed as required by law, court order, or governmental authority, except Agency must immediately notify Sprint of the obligation as Sprint's Confidential Information is likely to include Sprint Customer Information.  Sprint may move the ordering court or authority for a protective order or other appropriate relief.

e) **Use of Confidential Information**.    The receiving party will use the Confidential Information only in the course of performing its duties under this Agreement.

f) **Copying of Confidential Information**.  The receiving party will not make any copies of Confidential Information, except as permitted in writing by the disclosing party.  Copies of Confidential Information are subject to the confidentiality protections of this Agreement.

g) **Limitations on Export of the Confidential Information**.  The receiving party will not export any Confidential Information in any manner contrary to the export regulations of the United States.

h) **Return of Confidential Information**.  Each Party will return, without keeping copies, all Confidential Information of the other Party upon the expiration or termination of this Agreement.

**15. Privacy.**

a) **Sprint Information.**  Sprint Information is any information about persons or entities that Agency obtains under this Agreement, which relates to prospective, former or existing customers of Sprint.  Sprint Information includes  the Assurance Wireless Applications, names, address, contact information, social security numbers, credit card information, customer proprietary network information (or "CPNI" as defined under 47 U.S.C. § 222), location information and account information, and any other information that either alone or in combination with other data, could provide information to a particular person.  Sprint owns all Sprint Information and makes no representations or warranties about Sprint Information.

CONFIDENTIAL                                                  SPRMAR-000012

b) **Collection; Use and Compliance**.

  i.   Generally.  Agency may only collect, access, use, maintain, or disclose Sprint Information to fulfill its obligations under this Agreement.  Agency will not collect any information other than what is required to process applications pursuant to the SOPs.

  ii.  Compliance with Law.  Agency will comply with all laws relating to the collection, use, access, maintenance or disclosure of Sprint Information, including data security, marketing and consumer protection laws.

  iii. Use of CPNI.  Agency may not use, allow access to, or disclose CPNI to any other party, unless required to make such disclosure under force of law.

  iv.  Protection of CPNI.  Agency must have in place and maintain appropriate protections to ensure the ongoing confidentiality of customers' CPNI.

  v.   Unauthorized Use.  Agency acknowledges that permitting access to Sprint Information by individuals or entities not authorized by Sprint or not otherwise Authorized Persons as defined below, is a violation of this Agreement, Sprint policies and the law.

c) **Safeguards**.  Agency is fully responsible for Sprint Information in its possession or control.  Agency will use administrative, physical, and technical safeguards that prevent the unauthorized collection, access, disclosure, storage, and use of Sprint Information. These Safeguards will, at a minimum, include:

  i.   assign unique, random and strong passwords and other access controls so that only authorized individuals (i.e. authorized employees, Contractors or agents, who are contractually bound by non-disclosure agreements with provisions at least a protective as contained herein, collectively "Authorized Persons") who have a legitimate business need consistent with the terms and conditions of this Agreement may access or use it;

  ii.  encrypt electronic Sprint Information in Agency's possession or control when not being used (e.g. while "at rest") by an Authorized Person, and at all times while in course of transmission or storage using proven, standard algorithms such as Advanced Encryption Standard (AES), Triple Data Encryption Standard (3DES), RSA, Rivest Cipher 5 (RC5).

  iii. use appropriate firewalls, virus protection and other technical safeguards to prevent intrusion or harmful transmissions to any network or facility on which Sprint Information is stored, including ensuring all servers are hardened to industry standards and such secure configurations are validated at least semi-annually.

  iv.  store and secure paper records of the completed Part 2 of the Assurance Wireless Applications, to the extent Agency has any, in separate and separately locked filing cabinets/rooms on-site with access limited to those with a business need to know;

13

v.  secure paper records containing Sprint Information, to the extent Agency has any, in a manner that protects them during use (e.g. not leave in plain view on a counter);

vi.  Shred or otherwise destroy (and certify such shredding or destruction of) paper records containing Sprint Information as soon as no longer needed for business purposes (*__except__* the completed Part 2 of Assurance Wireless Applications, which must be submitted to Sprint per the SOPs); in addition, all data storage devices shall be properly wiped or degaussed to ensure all Sprint Information is removed when data is no longer needed.

vii.  restrict access, use, disclosure or storage of Sprint Information to locations within the United States;

viii.  share authentication mechanisms (e.g. usernames, passwords, digital certificates) used to restrict access to Sprint Information only with Authorized Persons who have a legitimate business need consistent with the terms and conditions of this Agreement to access Sprint Information;

ix.  immediately revoke access to Sprint Information for anyone who no longer has a legitimate business need consistent with the terms and conditions of this Agreement to access Sprint Information;

x.  immediately report to Sprint in writing any compromised, lost, stolen, disabled, damaged or misappropriated authentication mechanisms  or hardware (e.g. computers, laptops or anything else used to access Sprint Information);

xi.  comply with any communicated Sprint security policies or programs (including without limitation any requirement that the Agency register its computers or IP addresses that access Sprint Information) with Sprint;

xii.  limit Authorized Persons to persons or entities located in the United States (i.e. Agency may not use employees located outside of the United States; all employees must perform under this Agreement in the United States); No Sprint Information may be used for testing in a development or test environment; and

xiii.  train Authorized Persons with access to Sprint Information in proper security practices and procedures and ensure compliance with Agency's obligations under this agreement and all Sprint policies and procedures.

**d)  Notice of Security Breach.**

i.  Notice by Agency*.*  Agency will promptly (and in no event longer than 36 hours) notify Sprint of any facts known to Agency concerning any accidental or unauthorized access, disclosure or use, loss, damage or destruction of Sprint Information by any source known to Agency.

ii.  Cooperation.  Agency will fully cooperate with Sprint in the event of an accidental or unauthorized access, disclosure, use, loss, damage or destruction of Sprint Information by any source known to Agency.  If requested by Sprint,

14

                                                                 SPRMAR-000014

Agency will take the appropriate steps to limit the unauthorized access, disclosure or use, seek the return of any Sprint Information, and assist in providing notice.

e) **Disclosure of Sprint Information.**  Agency will not disclose Sprint Information, other than to Authorized Persons, unless Sprint has given its prior written consent to the disclosure.  Before disclosing Sprint Information to any person, Agency must ensure that that person is bound by the same obligations as Agency under this Agreement.  In the event that Agency  is required by law, court order, or governmental authority to disclose Sprint Information, Agency will:

   i. notify Sprint as soon as practicable of the request so that Sprint at its option may seek a protective order or take other action to prevent or limit the disclosure; and

   ii. cooperate with Sprint's efforts to obtain a protective order or other reasonable assurance to preserve the confidentiality of the Sprint Information.

f) **Return of Sprint Information.**  Agency will return all Sprint Information upon the termination or expiration of this Agreement, or earlier if Sprint requests.   In the alternative to Agency's retention obligations, Agency may request to turn over the Sprint Information (including the Service Agreements) before the end of the 2 year period. Sprint may request that Agency return the completed Part 2 of the Assurance Wireless Applications or Sprint Information at any time, and Agency will immediately return such information (paper or electronic) without keeping copies as instructed by Sprint.  In all events, Agency will return Sprint Information in a manner that protects Sprint Information from unauthorized access.

g) **Restrictions on Direct Marketing.**  Unless authorized by Sprint in writing, Agency will not conduct direct marketing via facsimile, wireless messaging (SMS, Text, MMS, bluecasting, etc.), electronic mail or telephone in connection with this Agreement.

h) **Agency Privacy Policy and Annual Certification.**  Agency will certify annually its continued compliance with all of the obligations relating to protection of Sprint Information in this privacy section and the related provisions in this Agreement.

i) **Miscellaneous.**  The acts or omissions of Agency and anyone with which it is associated (such as its employees, representatives, affiliates, agents, contractors) are Agency's acts or omissions.  The rights and obligations in this Section 15 and any other provision in this Agreement that is reasonably necessary to enforce them, will survive the termination or expiration of this Agreement for any reason.  The provisions of this Section 15 control if they conflict with any other provision in the Agreement.  Because a breach of any privacy provision may result in irreparable harm to Sprint, for which monetary damages may not provide a sufficient remedy, Sprint may seek both monetary damages and equitable relief.

## 16. Term.

The term ("Term") of this Agreement is two (2) years from the Effective Date of this Agreement.

## 17. Termination.

a) **Termination for Convenience**. Either party may terminate this Agreement at any time without cause with ninety (90) days written notice to the other party.  In addition, Sprint

15

may terminate immediately upon notice if the Assurance Wireless offering is suspended, materially modified or terminated for any reason.

**b) Immediate Termination for Cause by Sprint**. Sprint may terminate the Agency Agreement for cause immediately upon written notice to Agency, if Agency:

    **i.** misrepresents the Assurance Wireless Service Offer, or misrepresents its relationship with Sprint;

    **ii.** falsifies information submitted to Sprint, including by or through fraudulent means (such as false representation of the identity of the Customer or falsifying an applicant's information);

    **iii.** misuses or modifies any Sprint Marks, or uses any Sprint Marks without Sprint's written consent;

    **iv.** fails to safeguard access to Sprint Information;

    **v.** breaches a provision of the SOPs, or any provision in Sections 1 (Authority), 2 (Obligations of Agency), 14 (Confidentiality), 15 (Privacy), or 18(b) (Assignment);

    **vi.** subcontracts or attempts to subcontract, any of its duties under this Agreement in violation of Section 2(e) ;  or

    **vii.** fails to comply with any laws, ordinances, rules or regulations.

**c) Termination With Cause**.  If either party believes that the other has materially breached this Agreement (except for any such breach which falls under 16(b)), a written notice will be sent describing the breach and providing the breaching party with ten (10) days, after receipt of notice, to cure.  If the breach is not cured within the ten (10) day cure period, this Agreement may be terminated by the non-breaching party without any further obligation owed to the breaching party.

**d)** Either Party shall have the right to terminate this Agreement for cause effective upon delivery of written notice of termination to the other Party, if such other Party: (a) attempts an unauthorized transfer or assignment of this Agreement, (b) makes an assignment for the benefit of creditors; (c) is insolvent, is unable to pay its debts as they become due or institutes a voluntary petition for relief, or an involuntary petition is instituted against it and is not dismissed within thirty (30) days, under the U.S. Bankruptcy Code, or (d) a trustee or receiver of a substantial part of the other Party's assets is appointed by a court.

**18. Miscellaneous.**

  **a)** <u>Independent Contractor</u>. Agency is an independent contractor and has no express or implied right or authority to assume or create any obligation on behalf of Sprint, or represent that it has any right or authority to do so.  Agency has not paid a fee for this Agreement or for the right to solicit subscriptions for Assurance Wireless services. The Parties do not intend to create an agency, franchise, dealership, employment, partnership, landlord-tenant, or joint venture relationship, or any other relationship to Sprint than that of an authorized representative for the limited purposes described in this Agreement.

16

Agency does not have, nor may it hold itself out as having, the power to make contracts in the name of or binding on Sprint, nor does Agency have the power to pledge credit or extend credit in the name of Sprint.

**b)** <u>Assignment</u>.  This Agreement shall be binding upon the parties and their respective legal successors and permitted assigns.  Neither party may assign (by operation of law or otherwise) this Agreement without the prior written consent of the other party and any such attempted assignment shall be void; <u>provided</u>, <u>however</u>, that, in the event of a sale, merger, reorganization or similar transaction involving the sale of all or substantially all of the assigning party's shares or assets to a third party or to any affiliate or successor in interest, no such consent shall be required.

**c)** <u>Choice of Law</u>.  The validity of this Agreement, the construction and enforcement of its terms, and the interpretation of the rights and duties of the parties shall be governed by the laws of the State of New York.  The parties hereto agree that the state and federal courts of New York, New York shall be the proper forums for any legal controversy arising in connection with this Agreement, and the parties hereby irrevocably and unconditionally consent to the exclusive jurisdiction of such courts for such purposes.

**d)** <u>Modifications</u>.  No modification, amendment, supplement to or waiver of this Agreement or any of its provisions shall be binding upon the parties hereto unless made in writing and duly signed by both parties.

**e)** <u>No Waiver</u>.  A failure or delay of either party to this Agreement to enforce at any time any of the provisions of this Agreement, or to exercise any option which is herein provided, or to require at any time performance of any of the provisions hereof, shall in no way be construed to be a waiver of such provision of this Agreement.

**f)** <u>Severability</u>.  In the event any one or more of the provisions of this Agreement shall for any reason be held to be invalid, illegal or unenforceable, the remaining provisions of this Agreement shall be unimpaired, and the invalid, illegal or unenforceable provision shall be replaced by a mutually acceptable provision, which being valid, legal and enforceable, comes closest to the economic effect and intent of the parties underlying the invalid, illegal or unenforceable provision.

**g)** <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the parties and supersedes all previous agreements, promises, proposals, representations, understanding and negotiations, whether written or oral, between the parties respecting the subject matter hereof.

**h)** <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

## 19. Notices.

All notices given by either party under this Agreement must be in writing and delivered by postage-prepaid certified mail (return receipt requested), overnight courier, or facsimile with confirmation to the following addresses:

17

SPRMAR-000017

| Sprint: | Agency: |
|---|---|
| Sprint United Management Co. | Credico (USA) LLC |
| 10 Independence Blvd.<br>Warren, NJ 07059<br>Attn: Dan Solomon, Legal Dept.<br>Daniel.Solomon@sprint.com<br>Fax: 908-607-4078 | 525 W. Monroe Street, Suite 2350,<br>Chicago IL 60661<br>Attn: Jesse Young, President<br><br>Fax: 312-300-4874 |

Notices will be effective upon receipt or when delivery is refused.  Each party may change its address by giving notice to the other party of the new address.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the Effective Date.

As stated and agreed:

**SPRINT UNITED MANAGEMENT CO.**　　　　**CREDICO (USA) LLC**

By: _Callie M. Jones_　　　　By: _[signature]_

Name: _Callie Merritt-Jones_　　　　Name:　Jesse Young

Title: _Director, Emerging Channels_　　Title: President_____

Date _9/27/2013_　　　　Date:　September 24, 2013

18

**CONFIDENTIAL**　　　　　　　　　　　　　SPRMAR-000018

## SCHEDULE 1

### [List of Contractors]

Red Ten NYC, 1150 Avenue of the Americas, 5th Floor Suite, New York City 10036

Marketing Partners, 42 S 15th street, Suite 1300, Philadelphia, PA 19102

7 Marketing, 1100 east hector street, Suite 205, Conshohocken, PA 19428

Legacy Marketing of Boston, 330 Bear Hill Rd, Suite 202, Waltham, MA 02451

Miami Marketing Associates Group, 1444 Biscayne Blvd., Suite 210, Miami, FL. 33132

Altavista Group Inc, 323 Washington St., Floor 3, Hoboken, NJ. 07030

SYD Group, Inc., 3500 North Causeway BLVD, STE. 190, Metaire, LA  70002

Angelic Marketing, 17 Brandywine Drive, Deer Park, NY 11729

Elite Talent, Inc., 301 McCullough Dr., Ste. 400, Charlotte, NC. 28262

ICM Fundraising Inc., 12655 N. Central Expressway, Ste 1025, Dallas, TX 75243

BTC Marketing Group, 10190 Katy Freeway, Ste. 555, Houston, TX 77043

Neilson Enterprises, Inc., 1050 Wall Street W Suite 203, Lyndhurst, NJ 07071

One Source Business Connections, 9 W. Beau Street, Washington, PA. 15301

I.C. Promotions, 122 Space Park South Drive, Building A3, Nashville, TN 37211

Scott Promotional Group, 500 Hoover Plaza Southland Dr, Ste 211, Hoover, AL  35226

CONFIDENTIAL                                    SPRMAR-000019

## Exhibit A

Assurance Wireless Market Area

OA: Credico

**Market Area**
Designated as:

West Virginia: all counties
Pennsylvania: all counties
Connecticut: all counties
Massachusetts: all counties
Rhode Island: all counties
Maine: all counties
New Jersey: all counties
New Hampshire: all counties
Louisiana: all counties
Alabama: all counties

New York:
Counties of Richmond, New York, Nassau, Suffolk, Queens, Kings, Bronx

Texas:
Counties of Harris, Galveston, Dallas, Tarrant

Tennessee:
Counties of Davidson

North Carolina:
Counties of Mecklenburg

Florida:
Counties of Miami-Dade

Market Area is non-exclusive.  Review of Agency's productivity will be based on each assigned market as well as the overall markets in which Agency operates.

CONFIDENTIAL                                                                    SPRMAR-000020

**Exhibit B – Outreach Program Standard Operating Procedures.**

**[Provided in a separate attachment]**

21



*Outreach Agency Program*

**Last Revision**:  8-20-2013

# Outreach Agency Program
## Standard Operating Procedures

## Table of Contents

**Program Overview** .................................................................................2

**Important Information**.........................................................................2

**Section 1:  Outreach Agency Ownership & Minimum Requirements** .........3

**Section 2:  Outreach Agency Customer Experience** ...................................4

**Section 3:  Audits & Mystery Shop Program** .........................................4-5

**Section 4:  Outreach Agency Sales Experience** ......................................5-6

**Section 5:  Outreach Agency Operations Standards**...............................7-9

    Events and Employee Scheduling ........................................................7

    Employee Appearance.........................................................................7

    Event Appearance ...............................................................................8

    Personnel ..........................................................................................8-9

    Marketing; Media ...............................................................................9

**Section 6:  Outreach Agency Training**.......................................................9

**Resources and Feedback** .........................................................................9

© 2011 Sprint. All Rights Reserved.
The SPRINT name and logo are trademarks of Sprint.
All trademarks are the property of their respective owners. Proprietary Information—Restricted.

**CONFIDENTIAL**                                                    **SPRMAR-000022**



*Outreach Agency Program*

**Last Revision**:  8-20-2013

## Program Overview

The Outreach Agency Program (the "Program") is for Outreach Agencies committed to offering the best Assurance Wireless customer experience possible.   Assurance Wireless intends this Program to be for Agencies of the highest caliber.

Outreach Agencies (OAs) will conduct direct grassroots outreach with potential customers in the field.  These OAs operate on behalf of Assurance Wireless to distribute applications to prospective AW customers using an electronic submission device. To participate in the Program, an OA must apply to Assurance Wireless for certification.  The OA certification process will be implemented at the discretion of the Emerging Channels Director (ECD) and supported by the National Sales Manager (NSM) & National Account Managers (NAM).

These Standard Operating Procedures set forth herein apply to all OAs and the field agents that work for them.  Once an OA signs the Outreach Agency Master Agreement (the "Master Agreement"), these Standard Operating Procedures (SOPs) must be adhered to at all times.

Assurance Wireless may terminate the Master Agreement for cause immediately upon written notice if the OA or its field agents fails to meet the performance requirements set forth herein.

## Important Information

This document is intended for the Assurance Wireless sales employees and Outreach Agency principals. Any distribution of this document to any individual not employed by Assurance Wireless, not an authorized OA of Assurance Wireless, or to any unauthorized person or organization is strictly prohibited. It is the responsibility of the OA to ensure all employees/agents performing AW activity have been educated regarding the rules and requirements contained in these SOPs.

Assurance Wireless reserves the right to modify, revoke, suspend, terminate, or change any or all plans, policies or procedures contained in this SOP document, in whole or in part, at any time with or without advance notification.  Assurance Wireless shall notify each OA of all revisions to these SOPs, and each OA shall, upon notification, be responsible for adhering to such revised SOPs and ensuring their employees/agents have been educated on all changes.

© 2011 Sprint. All Rights Reserved.
The SPRINT name and logo are trademarks of Sprint.
All trademarks are the property of their respective owners. Proprietary Information—Restricted.

**CONFIDENTIAL**                                                                    **SPRMAR-000023**



# *Outreach Agency Program*

**Last Revision**:  8-20-2013

## SECTION 1:  Outreach Agency Ownership and Minimum Requirements

**Ownership Requirements:**

1. As stated in the Master Agreement, the OA must directly hire and engage all field agents and employees and is not permitted to use any third parties to carry out the Assurance Wireless services unless it is expressly permitted in the executed Master Agreement.
2. Upon Sprint's request, OA principals must complete an "Ownership Acknowledgement Letter" to verify fully meet the ownership requirements of the Assurance Wireless Outreach program.
3. *OAs must immediately notify Assurance Wireless management if contacted by the press, legal, or law enforcement authorities regarding any aspect of Assurance Wireless.*
4. *OAs must immediately notify Assurance Wireless management if any aspect of fraud has been committed, is found, or is suspected of OA employees or Assurance Wireless customers.*
5. *OAs must immediately deactivate user names and passwords assigned to an employee/agent that no longer performs AW activity on their behalf. Any activity performed using agent user names is the responsibility of the OA regardless of agent's employment status.*

**Other Minimum Requirements.**

OA is responsible for meeting the following minimum requirements:

1. Insurance. OA must be in continual compliance with the insurance requirements in the Master Agreement. If applicable, all sub-contractors must be in continual compliance with the insurance requirements.
2. The OA shall complete all required training and acknowledge such completion of training and agreement to the standards of operation requirements by execution of such forms as provided by Assurance Wireless.  All OA employees and field agents conducting AW marketing must be trained and certified prior to conducting any Assurance Wireless operations and/or sales.  A record of each employee's and field agent's training must be maintained at all times by the OA and provided to Assurance Wireless upon demand.
3. Agency must ensure all employees/field agents have been educated on the requirements and restrictions included in these SOPs and provided a written or electronic copy for later reference. Agents must be familiar with and able to describe applicable provisions contained within these SOPs, audits will be conducted to ensure compliance.
4. Agency acknowledges that Assurance Wireless will track OA's performance and results, and will share the results with the OA (through their National Account Manager or other Assurance Wireless management).
5. Assurance Wireless personnel will be granted access to all aspects of OA's operations, as it relates to AW activity, upon demand.
6. OA will make every effort to prevent any fraudulent or improper activity by its employees.

© 2011 Sprint. All Rights Reserved.
The SPRINT name and logo are trademarks of Sprint.
All trademarks are the property of their respective owners. Proprietary Information—Restricted.

**CONFIDENTIAL**                                                                                    **SPRMAR-000024**



# Outreach Agency Program

**Last Revision**: 8-20-2013

## SECTION 2:  Outreach Agency Customer Experience Standards

OA must be committed to providing an outstanding application experience for the customer.  Our common goal will be to work to provide a consistent customer experience across all touch points.

1. OA employees/Field Agents must be dressed appropriately and present Assurance Wireless in a positive manner at all times, as indicated below in Section 5: Outreach Agency Operations Standards.
2. OA employees/Field Agents must interact professionally with customers. Aggressive sales tactics are prohibited at all times.
3. Outreach Agency employees/Field Agents are expected to be knowledgeable about all applicable Assurance Wireless products and services so they may educate and set proper expectations for applicants and customers.
4. OA and OA employees/field agents may not post, print, or publish any marketing materials or advertisements (print, radio, social media, etc.) without prior Assurance Wireless written permission.
5. OA and OA employees/field agents may not conduct public appearances or interviews without prior Assurance Wireless written permission.
6. Outreach Agencies may have websites; however they may not represent, market, or offer Assurance Wireless products or services in any, shape or form on such websites.

## SECTION 3:  Audits & Mystery Shop Program

1. Assurance Wireless will periodically review each OA back office operations and sales event locations for compliance with the requirements and standards within the Master Agreement and these SOPs.
   (a) All deficiencies identified in audits and/or mystery shops (see below) must be corrected through an improvement plan developed by the OAs NAM. The OA will have five business days to address deficiencies after notice from the NAM.
   (b) Follow up audits and/or mystery shops may be performed by AW to ensure that the deficiencies have been corrected.
   (c) Based on any negative audit results, Assurance Wireless may, in its sole discretion, take action, up to and including termination of the Master Agreement and/or requiring any OA employee or field agent is removed from performing Assurance Wireless activities.

© 2011 Sprint. All Rights Reserved.
The SPRINT name and logo are trademarks of Sprint.
All trademarks are the property of their respective owners. Proprietary Information—Restricted.

**CONFIDENTIAL**                                                                         **SPRMAR-000025**



# *Outreach Agency Program*

**Last Revision**:  8-20-2013

2. Assurance Wireless will also conduct mystery shops (attending an event or interacting with OA staff without identifying themselves as Assurance Wireless representatives), at its discretion, to ensure OA is meeting the program standards.
   - Criteria that will be reviewed during a mystery shop may include, but is not limited to:
     - Customer Experience Standards
       - Event Branding
       - Sales Tactics
       - Knowledge of Assurance Wireless products and services
     - Customer Sales Experiences
     - Employee Appearance
     - OA operations
3. Outreach Agency self-audits.
   - OA is responsible for completing an audit for each employee on a quarterly basis.
     - OA must utilize the self-audit created by Assurance Wireless for each audit completed. A link to the audit will be sent to OA any time the audit changes.
     - OAs are expected to enter results that accurately reflect their observations including additional information where applicable to further describe the results for each question.
     - Results of self-audits will be reviewed by AW and compared to the results of audits performed by AW.
4. As an additional audit measure and to prevent fraudulent applications for Lifeline service, Assurance Wireless will mail a letter of acknowledgement (LOA) to the applicant's address with instructions to contact AW if they did not submit an application for Lifeline service.
   - OAs and/or employees/field agents that submit applications resulting in a negative response to an LOA may be subjected to additional audits and/or may be removed from performing AW services.

## SECTION 4:  Outreach Agency Sales Experience

Each employee/field agent must adhere to the sales guidelines set forth in the training.  This section sets forth only a summary of some of the key training guidelines.
1. When first meeting a potential customer the OA employee/field agent must utilize an approved pitch that meets AW standards and clearly indicates only qualified applicants may receive a lifeline service. Example: "Would you like to find out if you qualify for free lifeline service from Assurance Wireless?"
2. Each OA employee/field agent must explain to the potential customer the Assurance Wireless application process and timelines, including documentation submission, the processing and sending of the approval letter, and the activation process.
3. The OA employee/field agent must be prepared to:
   - Make a recommendation on a particular plan and handset for the customer.
   - Support the recommendation of the price plan and handset.
   - Explain the Assurance Wireless coverage areas to the customer, and direct the customer where to find coverage maps indicating their service area(s).
   - Follow the Assurance Wireless sales guidelines at all times.
   - Explain and identify the acceptable documentation required for proof of eligibility

© 2011 Sprint. All Rights Reserved.
The SPRINT name and logo are trademarks of Sprint.
All trademarks are the property of their respective owners. Proprietary Information—Restricted.

**CONFIDENTIAL**                                                              **SPRMAR-000026**



*Outreach Agency Program*

**Last Revision**: 8-20-2013

4. Agents must ask potential applicants if they currently have a lifeline phone with AW or any other carrier. If they answer in the affirmative agents must inform them they are only eligible for one phone and if approved by AW they must cancel their other service.
5. Agents must ask potential applicants if they have applied with AW or any lifeline carrier recently. If they answer in the affirmative agents must ask if they are still waiting for a decision to be made and if they are the agent must inform them they cannot submit an application at this time.
6. Agents may not submit applications for any person they observed applying with another agent or carrier; or from persons they believe have applied; or currently have a lifeline phone. Agents must error on the side of caution when uncertain of the applicant's responses.
7. OA employee/field agents may only submit applications for persons who qualify to receive a lifeline service.
8. Agents must provide every applicant with the written attestations and legal wording takeaway once it is implemented; it is the agent responsibility to ensure they have enough takeaways to provide to every applicant. If the agent runs out of takeaway forms they may not submit applications until they obtain more.
9. Agents must provide every applicant with the AW magnet with their PIN written. It is the agent responsibility to ensure they have enough magnets to provide one to every applicant, if the agent runs out of magnets they may not submit applications until they obtain more.
10. Agents may not recommend or require applicants to use a PIN other than their own choosing. Agents may make generic statements to give applicants and idea of what they can use for a PIN such as "some applicants use special dates they will remember like a birthdate or anniversary." If applicants cannot come up with a PIN of their own choosing the agent may not submit their application.

**Electronic submission device**
1. OA employees/field agents using an electronic submission device:
   a. May complete the application for applicant including the attestations and signature; however they must completely read attestations and legal wording, and provide a written copy to applicant for their records. Agents must receive acknowledgement and approval from applicant prior to completing this step on their behalf.
   b. May not solicit any applicant information other than what is required to complete the electronic application.
   c. May not keep a copy of any customer proprietary information (e.g. may not make an additional copy of the documentation)
   d. May only submit applications while the applicant is present.
   e. Are responsible for protecting the electronic submission device at all times and must immediately report the loss/theft of the device to their supervisor.

2. A user name and password will be assigned to each OA employee/field agent. Electronic submission devices will input the agency code and agent code onto each electronically submitted application so they can be tracked for compliance, acceptance, and payment.
   a. Agents may not share their password with anyone, including their supervisor, to ensure only the agent has the ability to use their login ID.
   b. Agents must change their password whenever they believe their password is known to someone other than themselves.

© 2011 Sprint. All Rights Reserved.
The SPRINT name and logo are trademarks of Sprint.
All trademarks are the property of their respective owners. Proprietary Information—Restricted.

**CONFIDENTIAL**                                              **SPRMAR-000027**



# Outreach Agency Program

**Last Revision**:   8-20-2013

## SECTION 5:  Outreach Agency Operations Standards

### 1. Events and Employee Scheduling

(a) The OA will identify events where it shall be appropriate to promote Assurance Wireless. Events must be approved by Assurance Wireless prior to start of event and are only permitted in approved locations and settings. The OA will work with their NAM to obtain approval for all events.

(b) Events must be staffed appropriately to meet/exceed productivity objectives and only trained and scheduled employees/field agents may represent Assurance Wireless.

(c) Utilizing the Agent Scheduling Log (log) the OA must keep a schedule of all daily events indicating the location, hours of operation, and employee(s) staffing the event.

(d) The log must be submitted to the OAs NAM on a weekly basis prior to 5pm EST every Friday and upon request. All schedule changes that are known prior to the start of the reported shift must be reported to the NAM so they may update the log.

(e) OA is required to obtain all permits, licenses, and permissions prior to the start of any Assurance Wireless event or activity and must display such if required by law.

(f) Event staffing may extend beyond the originally scheduled hours or completed early, however all changes must be reported to and approved by the OA principal or appropriate level of management prior to extension/termination of an event.

(g) Employees/field agents may only perform Assurance Wireless activities at times and locations known to and approved by OA, any variance from scheduled hours or event locations must receive prior approval from OA management.

(h) All events must conform to the Employee Appearance and Events Appearance requirements below.

### 2. Employee Appearance

The Employee Appearance requirements were developed to ensure all OA employees/field agents portray a professional appearance consistent with Assurance Wireless standards.

o  Assurance Wireless provided t-shirts must be worn at all times while working events, exceptions may be obtained from their NAM for permission to dress in professional attire instead of wearing AW t-shirts.

o  Name badges including the agent's name and company must be worn and clearly visible at all times. Agent title, agent ID, and company logo are optional.

o  Employees/field agents must be dressed in a manner appropriate for the location/event. Shorts, of appropriate length, are permitted in warm weather climates.

o  Employee/field agent appearance must represent Assurance Wireless in an appropriate manner at all times; uniforms must be clean and neat.

o  District Managers and other non-sales employees (i.e. OA principals) must wear appropriate attire including an approved name badge lanyard while assisting applicants/customers at approved events.

© 2011 Sprint. All Rights Reserved.
The SPRINT name and logo are trademarks of Sprint.
All trademarks are the property of their respective owners. Proprietary Information—Restricted.

**CONFIDENTIAL**                                                                 **SPRMAR-000028**



*Outreach Agency Program*

**Last Revision**:  8-20-2013

## 3. Event Appearance

The Event Appearance requirements were developed to ensure all OA locations and events portray a professional environment consistent with Assurance Wireless branding.

- o Whenever possible events must be merchandised with approved Assurance Wireless signage/banner, electronic submission device, and brochures. At a minimum, agents must have brochures.
- o All marketing materials and branding signs must be current (e.g., signs, banners, logos, etc.) and approved by Assurance Wireless.
- o No locally created merchandising/collateral may be utilized at any time without prior approval from Assurance Wireless.
- o The OA is required to display, if required, all permits, licenses, and permissions prior to the start of any Assurance Wireless event or activity.
- o All proprietary and confidential items must be protected at all times and be secured so they are not accessible to anyone but authorized personnel.
- o The basic guideline:  If it's not ordered from or provided by Assurance Wireless it should not be utilized for any Assurance Wireless activity.

## 4. Personnel

### a. Hiring

i. Background checks must be completed by the OA for every employee/field agent working with Assurance Wireless related activity. A background check that shows any criminal background or inappropriate conduct should disqualify an individual.

- • Background checks that show crimes against a person, such as assault, and fraud related activity, such as identity theft, are examples of, but are not the only reasons, for disqualifying an individual.
- • If an OA is unsure whether background results disqualify an individual they should contact their National Account Manager who will assist in obtaining a decision made on a case by case basis.

ii. Personnel performing Assurance Wireless activity must be employed the OA directly as employees or sub-contractors.

iii. Employees/sub-contractors may not hire employees or sub-contractors to work on their behalf unless expressly permitted in the executed Master Agreement.

iv. Employees/subcontractors may supervise other personnel who perform AW activity.

v. OA employees/sub-contractors must be notified, and acknowledge by signature ("agent acknowledgment"), that they are OA employees/subcontractors and are not Assurance Wireless employees/subcontractors in any way, shape, or form, and that Assurance Wireless is not responsible for their compensation. They must also agree not to involve Assurance Wireless in employee/employer disputes.

© 2011 Sprint. All Rights Reserved.
The SPRINT name and logo are trademarks of Sprint.
All trademarks are the property of their respective owners. Proprietary Information—Restricted.

**CONFIDENTIAL**                                                                                      **SPRMAR-000029**



*Outreach Agency Program*

**Last Revision**:  8-20-2013

  **b.  Documentation**
   i.   Employee/subcontractor files must be kept and made available to Assurance
         Wireless for auditing and compliance reasons and must  include:
         • IRS documentation (i.e. W4 or 1099)
         • Background check results
         • Certificate or record of Training
         • Agent Acknowledgment
   ii.  OA must submit employee/subcontractor files for new hires prior to them
         performing any AW activity other than training.
   iii.  Documentation may be submitted to AW in hard copy mailed, online access
         (such as DropBox or Google Docs), or fax/email.

**5.  Marketing; Media**
   a) OA and OA employees/field agents may not post, print, or publish any marketing
       materials or advertisements (print, radio, social media, etc.) without prior Assurance
       Wireless written permission.
   b) OA and OA employees/field agents may not conduct public appearances or interviews
       without prior Assurance Wireless written permission.
   c) Outreach Agencies may have websites; however they may not represent, market, or
       offer Assurance Wireless products or services in any, shape or form on such websites.

## SECTION 6:  Outreach Agency Training Standards

Training is an essential part of developing employees/field agents who effectively sell Assurance
Wireless products and services and meet customer needs.  Completion of all training is required and
critical to OA success.
   1. Outreach Agency employees and field agents, included OA Principal(s), must complete and
       pass the Assurance Wireless New Hire training class prior to performing any Assurance
       Wireless activities.
   2. OA employees/field agents who do not perform Assurance Wireless activity are encouraged,
       but not required, to attend Assurance Wireless New Hire training.
   3. OA must notify their NAM of all new hires prior to their start of Assurance Wireless activity.
   4. OA training staff may certify their employees utilizing trainers that have been certified by AW
       as trainers.
   5. OA is expected to maintain on-going selling skills and product knowledge as new processes,
       services and devices become available.
   6. The NAM will notify the OA principal in a timely manner of any changes to the training
       program so the OA can coordinate required personnel training within an appropriate time.

## Resources and Feedback

   1. **Resources:** Support tools, training guides and related materials can be obtained from OA's
       NAM.
   2. **Feedback**:  Please submit any feedback regarding this program through your NAM, NSM, or
       Assurance Wireless operations staff, feedback may be submitted via telephone or via email.

© 2011 Sprint. All Rights Reserved.
The SPRINT name and logo are trademarks of Sprint.
All trademarks are the property of their respective owners. Proprietary Information—Restricted.

**CONFIDENTIAL**                                                                    **SPRMAR-000030**

## EXHIBIT C

## INSURANCE REQUIREMENTS

1.  **Coverage Requirements.**  Agency will provide and maintain at its own expense the following insurance against liability arising in any way out of this Agreement:

> **1.1**   Commercial General Liability insurance (including but not limited to, contractual liability insurance and hired and non-owned auto coverage) with a limit of $2,000,000 for any one occurrence, $4,000,000 General Aggregate;
>
> **1.2**   Workers' Compensation in compliance with the laws of the state(s) where operations occur, with Employers Liability insurance in the amount of $500,000 each accident, $500,000 by Disease each employee and $500,000 by Disease, Policy limit;
>
> **1.3**   Umbrella form excess liability insurance with limits of at least $3,000,000, and
>
> **1.4**   All policies will be "occurrence" form.

2.  **General Requirements.**

> **2.1**   *Insurance Company Ratings.*  All insurance policies will be issued by companies licensed or authorized to transact business in the state(s) where operations will occur and who hold a current rating of at least A-, VII according to A.M. Best.
>
> **2.2**   *Sprint as Additional Insured and Loss Payee.*  Sprint, its directors, officers, partners, affiliates, subsidiaries and employees will be named as additional insureds on all liability insurance policies required in this Agreement.  Sprint will be listed as a loss payee as its interests apply on the all-risk policy.
>
> **2.3**   *Waiver of Subrogation.*  Each insurance policy will contain a waiver of subrogation in favor of Sprint.
>
> **2.4**   *Notice of Cancellation or Changes.*  Each insurance policy will contain a clause requiring that the insurer endeavor to give Sprint at least 30 days prior written notice of cancellation, and Agency will immediately notify Sprint of any reduction or possible reduction in the limits of any the policy where the reduction, when added to any previous reduction, would reduce coverage below the limits required under this Agreement.
>
> **2.5**   *Primary Coverage.*  Agency's insurance will be primary for services/work provided under this agreement while Sprint's insurance will be excess and non-contributory to any insurance coverage provided by the Agency.
>
> **2.6**   Agency shall require any sub-contractor working for them in connection with this Agreement to meet all of the above insurance, including providing a Certificate of Insurance and including Sprint Nextel as an additional insured on all liability policies.

3.  **Proof of Insurance.**  Agency will provide proof of insurance either in the form of a Certificate of Insurance (ACORD form 25S or equivalent) or a web based Memorandum of Insurance.  Agency will provide this proof within 15 days of signing this Agreement and again within 15 days of the renewal or replacement of each policy.   All certificates of insurance will be addressed to the address designated by Sprint:

Sprint Nextel Corporation
Attn: Risk Management
KSOPHT0101-1A432
6391 Sprint Pkwy
Overland Park, KS 66251

22