UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMIE MARTIN and DANEISHA SINGLETON, on behalf of themselves and all others similarly situated, and the Proposed New York Rule 23 Class, | : :  : Case No. 15-cv-05237 (PAE/HBP) : |
| Plaintiffs, | : : |
| -against- | : : DECLARATION OF VINCENT |
| SPRINT/UNITED MANAGEMENT COMPANY and WALLACE MORGAN, INC., | : BUONGIOVANNI OF SPRINT : : |
| Defendants. | : : : |

I, VINCENT BUONGIOVANNI, declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am of legal age and competent to make this Declaration and have personal knowledge of the facts set forth in this Declaration.

2. I make this Declaration in support of Defendant Sprint/United Management Company's ("Sprint") Opposition to Plaintiffs' Motion for Conditional Collective Certification and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b).

3. I am currently employed as Manager of Program Managers for Sprint in Philadelphia, Pennsylvania, and have held this position since February 11, 2011.

4. Through its Assurance Wireless Brand, Sprint offers services for the Lifeline Assistance Program ("Lifeline Program"), which provides mobile phones and services to qualifying households. Sprint receives subsidies from the Universal Service Administrative Company ("USAC") in exchange for providing Lifeline Program service to low-income and

1

other eligible consumers in compliance with the legal and regulatory framework imposed by state and federal law.

5. As the Manager of Program Managers for Sprint, I am responsible for the Assurance Wireless programs' team operations and ensuring those team operations comply with all applicable laws and regulations. As such, I have personal knowledge of Sprint's operations and management of its Assurance Wireless brand, including as it relates to the allegations contained in the Amended Class Action Complaint ("Complaint") in the above captioned matter.

6. As part of the responsibilities of my position, I manage Sprint's contractual relationships with the third-party vendors (referred to as "Outreach Agencies" ("OAs") that Sprint retains to promote and market its Lifeline Program services through the Assurance Wireless brand.

7. Immediately prior to assuming the role of Manager of Program Managers for Sprint, I worked as a Region Operations Manager for Sprint's Northeast Region, which was responsible for overseeing Sprint's Retail, Business, and Indirect Channels in the Northeast Region. I held that position from the time of the Sprint-Nextel merger in 2005 until 2011.

8. Sprint acquired the Assurance Wireless brand when Virgin Mobile USA, L.P. became its wholly owned indirect subsidiary in 2009.

9. Since that time, Assurance Wireless has been Sprint's brand for the Lifeline Program, joining other well-known Sprint brands such as Virgin Mobile and Boost.

10. Sprint relies on its indirect channel, which is comprised of Sprint-authorized third-party vendors including independent dealers (for instance, Radio Shack) and OAs, to market and promote several of its brands in the field.

11. Although Sprint advertises its Assurance Wireless brand, it does not have employees or agents in the field marketing services for the Lifeline Program directly to potential individual subscribers. Therefore, Sprint indirectly markets and promotes its Assurance Wireless brand using OAs.[1]

12. Sprint contracts with a limited number of OAs, currently five, including, for example, Credico (USA) LLC ("Credico") and 20/20 Communications Inc. D/B/A 20/20 Companies ("20/20") to market the Assurance Wireless brand. The contractual relationship between Sprint and the OAs operates similarly to Sprint's contractual relationship with the indirect dealers of its other brands and services.

13. Each relationship to market Assurance Wireless is governed by a separate and individual agreement ("Outreach Agency Agreement"), which defines the contractual obligations of Sprint and the specific OA. Although there are similarities among the Outreach Agency Agreements, there are negotiated differences that are specific to the individual OA.

14. Like the indirect dealers who market Sprint's other brands, the OAs provide marketing services to other companies besides Sprint. In addition to Sprint's Wireless Assurance brand, OAs are employed to market for energy companies (e.g., competitive electrical service providers, as well as solar panel installations); charities and membership services organizations; credit card companies; home improvement companies (e.g., Home Depot and Lowe's); other wireless carriers (e.g., Verizon); and even other Lifeline Program service providers (e.g., SafeLink).

15. The OAs determine when, where, and how they will market the Assurance Wireless brand within their designated market areas.

---

[1] Potential customers can also obtain more information or apply for Lifeline services by visiting Sprint's website for the Assurance Wireless program or by calling the Assurance Wireless customer care center.

3

16. The Outreach Agency Agreements are designed to ensure FCC regulatory compliance, requiring that each OA (and its employees, subcontractors and/or field agents) fulfills the mandates of the Lifeline Program. Those mandates have changed over time (which, in turn, has necessitated the occasional alteration of the Outreach Agency Agreements), but currently include ensuring that each Lifeline Program subscriber satisfies strict eligibility requirements (for instance, ensuring income is below certain established guidelines or that the potential enrollee participates in one of several qualifying government programs; that the maximum of one Lifeline Program enrolled mobile phone per household is not exceeded; and that the potential enrollee has the ability to produce specific identification and required documentation), and complying with mandatory procedures to prevent waste, fraud, and abuse of the Lifeline Program.

17. The Outreach Agency Agreements also specify that Sprint will provide marketing materials and training materials. Although those materials are specific to the Assurance Wireless brand, they are otherwise similar in nature to materials Sprint provides to indirect dealers for Sprint's other brands.

18. The Outreach Agency Agreements envision that the interaction with potential subscribers to Assurance Wireless takes place through the use of "field agents" who assist the potential subscriber in understanding the program eligibility requirements, and, where those requirements are satisfied, process and submit their application for Lifeline Program service.

19. The OAs (or their subcontractors) are responsible for establishing the terms and conditions of the contracts or employment of their respective field agents.

20. Like the OAs themselves, field agents may work on multiple campaigns at the same time, or may be moved and shifted among campaigns. Decisions regarding when, where,

4

and on which campaign a field agent will work is at the discretion of the OA that contracts or employs them.

21.     Some of the OAs that contract with Sprint contract or hire their own field agents to perform the marketing and promotional obligations under the Outreach Agency Agreement. Until recently, for example, 20/20 directly marketed Assurance Wireless using its own field agents.

22.     Other OAs subcontract with other marketing companies who, in turn, contract or hire field agents. Credico, for example, retains numerous subcontractors (including Wallace Morgan) to perform its marketing and promotional obligations. Sprint is not a party to the subcontracts of its OAs.

23.     Some OAs and/or their subcontractors, like UPI Marketing Corp. in New York, hire their field agents as employees and provide them with W4s for their wages.

24.     Other OAs and/or their subcontractors enter into contracts with their field agents.

25.     Under the terms of the Outreach Agency Agreements, decisions regarding hiring, control, and firing of field agents are left to the individual OAs without input from Sprint.

26.     Sprint requires that each field agent who will be marketing the Assurance Wireless brand pass a background check demonstrating no history of fraudulent conduct or crimes against the person (such as assault or murder). Otherwise, the OAs are not required to report information concerning the terms and conditions of field agent contracts or employment to Sprint. Sprint does not bar an OA from contracting with or hiring individuals who cannot pass such an inquiry, but those individuals are excluded from marketing Assurance Wireless.

27.     Other terms of the Outreach Agency Agreements impose minimum standards on the conduct of the OA and the field agents it (or its subcontractors) contract or employ are

complying with state and federal laws relating to the Lifeline Program. These compliance-oriented requirements are contained in the "Standard Operating Procedures" ("SOPs") portion of the Outreach Agency Agreements, which also include minimum quality control measures designed to protect the Assurance Wireless brand.

28.     At base, the SOPs require field agents to convey accurate information and courteous customer service to potential enrollees in the Assurance Wireless Lifeline Program. The SOPs include audit requirements designed to detect and eliminate fraud within Sprint's Lifeline service. They also impose minimum online training requirements via "Sprint University," which the OA is required to ensure each field agent takes and passes prior to marketing the Assurance Wireless brand. In addition, they require that field agents don professional attire in the field. They also require that field agents are informed and knowledgeable concerning Sprint's products and services.

29.     Some of the requirements of the SOPs impose quality control conditions on the conduct of the OAs. One example arises in the context of events. The OAs are generally free to determine when and by whom Assurance Wireless will be marketed at events. Sprint requires that the OAs conduct events in approved locations, and that they staff the events appropriately and distribute only Sprint-authorized marketing materials and merchandise. However, Sprint does not direct the number or identity of field agents required at an event. Nor does Sprint control the scheduling of those field agents, or the duration of their work.

30.     Any requirements with respect to the number of hours worked by field agents, what hours are worked, or the performance goals for field agents are imposed by the OA (or subcontractor). For example, Credico provides a "daily checklist" for the agents of its

subcontractors to follow. Other OAs do not require their agents and/or the agents of their subcontractors to follow a "daily checklist."

31. Sprint does not require agents to work certain hours or to attain certain performance goals. Sprint also does not receive reports from OAs of time worked or applications submitted by individual agents. Sprint does have access to reports from their third-party application reviewer's ("Solix") website. The reports Sprint can access from Solix's website indicate the total number of Assurance Wireless applications submitted and a tracking number for each application is included.

32. It is my understanding that in connection with this lawsuit, Named Plaintiffs Jamie Martin and Daneisha Singleton have filed a motion seeking to represent and bring claims for failure to pay minimum wages and overtime wages on behalf of a nationwide collective of every person who gathered applications for enrollment in the Lifeline Program through Assurance Wireless in the last three years.

33. It is also my understanding that the Plaintiffs seek to represent *every* field agent who worked during this time period, regardless of, among other things, the OA and/or subcontractor for whom the field agent worked, the location where the field agent worked, and the time period during which the field agent worked.

34. Based on my involvement with the Assurance Wireless Lifeline Program at Sprint, I do *not* believe that it is possible to draw any general conclusions about the proposed class of field agents. This is because each field agent's experience is unique and differs depending on, among other things the particular OA's contract with Sprint, the particular OA's own policies and procedures, whether the OA uses subcontractors, whether the field agent worked for a subcontractor, the particular subcontractor's own policies and procedures, the field

8

agent's individual supervisors/trainers, the timeframe during which the field agent marketed Assurance Wireless, and the location where each field agent worked.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: November 13, 2015
Philadelphia, Pennsylvania

_____
VINCENT BUONGIOVANNI